## MEMCO STORES, INC.

### V.

## BARBARA W. YEATMAN

Record No. 830796

September 5, 1986

Present: All the Justices

*Lanier Thurmond (Seawell, Dalton, Hughes and Timms*, on briefs), for appellant.

*Irving M. Blank (Paul, Smith and Blank*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is a defendant's appeal from a judgment awarding the plaintiff $187,000 in damages in a slip-and-fall case. The defendant assigns error to the jury instructions and to the admission of evidence of a witness's extra-judicial statements. The defendant maintains that, absent such evidence, the plaintiff failed to prove primary negligence. Contributory negligence and the quantum of the verdict are not in issue on appeal.

Sometime between 2:00 p.m. and 4:00 p.m. on June 9, 1979, plaintiff Barbara W. Yeatman and her young daughters, Lisa and Wanda, entered a store operated by defendant Memco Stores, Inc., and walked down the main aisle toward the pharmacy. The store was well-lighted, and the floor was light in color. Lisa and her mother were walking abreast behind Wanda who was pushing a shopping cart. As they passed the pharmacy, the plaintiff waved to a friend, her foot slipped, and she fell to the floor.

The plaintiff testified that Memco's pharmacist, Charles E. Clark, Jr., "came over and helped get me up and went in the pharmacy and got a rag and cleaned up the floor and cleaned my shoe off." "It was a green slimy substance," she said, and "the pharmacist . . . said it was a plant leaf."

Following her fall, the plaintiff attempted to continue shopping but became nauseated and was unable to make any purchases. She reported the accident at the Memco credit office. As she and her daughters were leaving the store, Wanda called her mother's attention to several plant leaves on the floor "in the same general area" where the accident had occurred.

The plaintiff called the pharmacist as a witness and asked him if he recalled Mrs. Yeatman's accident. Clark replied, "I really don't remember." The plaintiff then asked if he remembered talk-

ing to Mrs. Yeatman's former lawyer in October following the June accident. Clark said that he remembered "talking with him and telling him that I helped her up" and that he had cleaned a substance from her shoe and the floor. The defendant objected on the ground that counsel was "cross-examining his own witness". The trial court ruled that Clark was an "adverse" witness and overruled the defendant's objection. The plaintiff then asked the witness if he had told the lawyer that he had seen a leaf on the floor and on Mrs. Yeatman's shoe, that it was a peperomia plant leaf, and that the plants were on display at the point the plaintiff fell. Clark answered in the affirmative, and the defendant renewed its objection.

Following argument by counsel out of the jury's presence, the trial court instructed the plaintiff's attorney "from this moment on [to] ask the witness what his testimony is". When the jury returned, the plaintiff's attorney resumed the interrogation and the witness responded as follows:

> Q. Do you recall whether there was a display to the right of where she fell?
> A. There is always a display there.
> Q. Do you think it was office furniture, desks, etc.?
> A. That's what I think it was, yes.
> Q. On this display of furniture, was there a peperomia plant?
> A. What I remember is, books, plants and lamps.
> Q. Do you recall a peperomia plant being there?
> A. Yes.

Debbie Worsham, a Memco employee, testified that she worked in the warehouse and in the "patio" where the store sold its plants, and that "when [she] worked in the plants, the plants were watered every day." Asked "whether the plants were ever displayed in the store out of the patio", she said that they were, but she had no knowledge whether there was such a display on the date of Mrs. Yeatman's accident. A "DAILY SWEEPING RECORD" introduced as an exhibit during Worsham's testimony showed that, on the day of the accident, the floors in the store had been swept at 10:00 a.m. and at noon but not again until 5:00 p.m.

Dr. Robert D. Decker, a botany professor, qualified as an expert witness for the plaintiff. Dr. Decker described a peperomia as a "succulent plant". Asked what would cause such a plant to shed its leaves, he replied: "Age of the plant, certain kinds of stress, such as temperature changes, overheating, underheating, and light. Sometimes things such as changing locations will cause a plant to lose its leaves and go into a stress period, and cause loss of leaves." He added that "a peperomia plant . . . if it is watered once a week, it rots" and the leaves remain moist after they shed "for quite a while."

The plaintiff, who underwent surgery for injuries to her back, introduced evidence of the nature and extent of her damages, and the defendant does not challenge the sufficiency of that evidence on appeal. The trial court denied the defendant's motion for summary judgment, granted Instruction No. 11 over the defendant's objection and refused Instruction No. D-5 tendered by the defendant. The jury found for the plaintiff. The trial court denied the defendant's motion to set aside the verdict and entered final judgment for the plaintiff.

■ On appeal, Memco contends that the evidence of Clark's extra-judicial statements was inadmissible, that those statements "constituted the only basis upon which the trial court could have predicated the giving of Instruction No. 11", and that, absent such evidence, the plaintiff failed to prove primary negligence. We need not decide whether the evidentiary ruling was correct, for we are of opinion that Clark's in-court testimony, considered in context with all the evidence adduced at trial, was sufficient to support the instruction and to raise a jury question of primary negligence. We review the evidence in the light most favorable to the plaintiff.

A "slimy" leaf on the floor where Memco's business customers were invited to walk was the cause of the plaintiff's fall, the injuries she suffered, and the damages she sustained. Memco suggested in argument at bar that this leaf may have dropped from the shoe of some customer who had visited the "patio" where plants were sold. In light of the evidence that this was one of several leaves found on the floor, all in the same general area, the jury could have rejected this theory as an unlikely coincidence.

Entirely apart from Clark's extra-judicial statements, his substantive testimony at trial supports a more logical explanation. He testified expressly that Memco had located a furniture display be-

side the aisle where Mrs. Yeatman fell and that books, lamps, and a peperomia plant were placed on the furniture. Worsham confirmed the fact that plants were sometimes taken from the "patio" and used for such purposes. Memco points out that Clark also testified that the plant was "set further back on the furniture, so if a leaf fell, it would have stayed on the furniture." But the jury was not required to accept what was essentially an opinion of the witness.

The plaintiff produced evidence to show that several factors could cause succulent plants to shed their leaves. Dr. Decker testified that changes in location and the consequent changes in temperature and light are harmful to such plants and that when a peperomia is watered too often, the plant rots and the leaves it loses retain their moisture after they fall "for quite a while."

Such evidence fully supports the conclusion that the leaf which caused Mrs. Yeatman to slip in the aisle had dropped there from a peperomia plant which Memco had placed too near the edge of furniture located beside the aisle. The question remains whether the evidence was sufficient to show that Memco violated the duty it owed to its customers.

As we understand the defendant's view of the case law, a storekeeper is liable for injuries sustained by a customer as a result of a hazardous object on the floor only when the customer proves that the storekeeper had notice of its presence in sufficient time to remove it and failed to do so. Memco complains that Instruction No. 11, granted over its objection, misled the jury because it relieved the plaintiff of the burden of proving such notice. Memco misinterprets the case law. We summarized the rules, extracted from prior decisions, in *Colonial Stores* v. *Pulley*, 203 Va. 535, 125 S.E.2d 188 (1962).

> The defendant owed the plaintiff the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or *should have known*, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or *should have been*, known to the defendant.

*Id.* at 537, 125 S.E.2d at 190 (citations omitted) (emphasis added).

▮ Hence, Mrs. Yeatman was not required to prove that the defendant had *actual* notice of a hazardous object on its floor in time to remove it. It was sufficient to prove *constructive* notice. If an ordinarily prudent person, given the facts and circumstances Memco knew or should have known, could have foreseen the risk of danger resulting from such circumstances, Memco had a duty to exercise reasonable care to avoid the genesis of the danger.

▮ Memco assigns error to the trial court's refusal to grant Instruction No. D-5. The defendant, citing *Pulley*, objected to the ruling on the ground that it was "a correct statement of the law". Because the instruction as tendered failed to instruct the jury on the question of constructive notice, we uphold the ruling.

▮ Although we do not approve the form of Instruction No. 11, set out in the margin,* we believe it was a fair exposition of the standard of care defined in *Pulley*. Applying the instruction to the facts in evidence, the jury could have found that Memco, a merchandiser of peperomia plants, should have known that a change in location, temperature, and light would cause such a succulent plant to shed moist leaves; that Memco positioned the plant on the furniture display in such a manner that the leaves could and did fall in the aisle; that Memco should have foreseen that this would create a risk of harm to customers using the aisle; that Memco violated its duty to have its premises in a reasonably safe condition; and, consequently, that Memco was guilty of negligence which was the proximate cause of the injuries Mrs. Yeatman suffered. We hold, therefore, that the evidence was sufficient to sup-

---

* If a store displays plants in such a way that the leaves may be caused to fall to the floor, and if such conduct creates a foreseeable risk of harm to customers, then the store is doing business which requires the storekeeper to use reasonable care to avoid the falling of leaves on the floor and if such leaves did fall then to discover and remove the leaves from the floor.

And if you believe from the greater weight of the evidence that the defendant so displayed its plants and that such conduct created a foreseeable risk of harm to the plaintiff, then there was a duty upon the defendant to use reasonable care to avoid the falling of leaves from its plant to the floor and when such leaves fall to the floor to use reasonable care to remove the leaf or leaves from the floor. If you believe from the greater weight of the evidence that the defendant violated this duty, then it is guilty of negligence. If you further believe from such evidence that such negligence was a proximate cause of the injuries sustained by the plaintiff, she exercising reasonable care for her own safety on her own behalf, then you shall find your verdict for the plaintiff.

port the jury's verdict, and we will uphold the trial court's ruling denying Memco's motion to set it aside.

Finding no error in the court below, we will affirm the judgment.

*Affirmed.*