## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Mabel Davis

   v.

Spotsylvania Mall Co.

February 19, 1997

Case No. CL95-477

BY JUDGE WILLIAM H. LEDBETTER, JR.

The defendant property owner asks the court to set aside a jury verdict in favor of its invitee in this slip-and-fall case. For the reasons that follow, the motion will be denied.

### *Facts*

On a Sunday afternoon around 2:30 to 3:00 o'clock, the plaintiff (Davis) arrived at the Spotsylvania Mall to return a sweater for her daughter. She entered through the north entrance which required her to walk along a concourse past a few shops, a bank, and several fast food restaurants, including Friendly's, Arby's, and a pizzeria. As she passed the bank and approached the pizzeria, she slipped on a small glob of ketchup or "ketchup-like" substance and fell, suffering serious and permanent injuries.

At the time, Davis was wearing loafers. She was carrying her purse and a bag that contained the sweater she was returning to Hecht's.

The floor of the concourse consisted of off-white tile, with speckles of white, gray, blue, and red. The area was well lit.

Davis, 77, never saw the substance that caused her to fall. According to other witnesses, it was about three inches in diameter. The edges of the substance were "dried to the floor," and the top was fine-textured, but crusty,

except where Davis' shoe had slid through it. The restaurants in the immediate vicinity sold take-out food, including ketchup and barbecue sauce.

Heather Ramsey was working at a kiosk in the middle of the concourse approximately 10-15 feet from where Davis fell. She was looking in Davis' direction and saw the fall. From her vantage point, she saw no foreign substance on the floor prior to Davis' fall. She had been working at the kiosk for more than three hours that day and had seen no ketchup or other such substance on the floor.

Spotsylvania Mall Company (the Company), owner of the Mall, employed security and maintenance personnel who were on duty that day. The acting manager testified that the entire premises had been swept before the Mall opened and that he had done a "walk-through," finding no hazards. A maintenance crew of three was working.

As a result of the fall, Davis sustained a comminuted fracture of her left knee and a patellar tendon rupture. Her medical expenses exceeded $18,000.00.

After a day-long trial, the court instructed the jury with regard to principles of primary negligence and contributory negligence applicable to the case. The jury returned a verdict for Davis in the amount of $100,000.00.

The Company made a motion to set aside the verdict and enter judgment pursuant to Virginia Code § 8.01-430 notwithstanding the verdict on the ground that the evidence is insufficient to support it. The court received the verdict but withheld entry of judgment pending submission of memoranda. Counsel have now submitted memoranda, and this opinion addresses the Company's motion.

## Decision

### I. *Primary Negligence*

It is sometimes said that Virginia jurisprudence is among the most unfavorable in the country toward persons injured in slip-and-fall incidents. Actually, the legal principles regarding the duties of a property owner to an invitee are the same as in almost every jurisdiction; they mirror "black-letter" hornbook law.

A business owner has the duty to use ordinary care to keep the premises in a reasonably safe condition for an invitee's use consistent with the invitation. Further, it has the duty to warn an invitee of any unsafe condition which it knows or by the use of ordinary care should know about, except that it has no duty to warn of an unsafe condition that is open and obvious to a person using

ordinary care for his or her own safety. The business owner is not a guarantor of an invitee's safety. 1 Virginia Model Jury Instructions — Civil No. 23.040; 13B M.J., *Negligence*, § 18.

More specific to cases involving a foreign substance on the floor, it is said that in carrying out its duty of ordinary care toward invitees, a business owner is required to remove, within a reasonable time, foreign objects from its floor which it may have placed there or which it knew or should have known that other persons had placed there; to warn the invitee of the unsafe condition if it is unknown to the invitee but was, or should have been, known to the business owner. *Colonial Stores v. Pulley*, 203 Va. 535 (1962); *Fobbs v. Webb Building Ltd. Partnership*, 232 Va. 227 (1986). The injured invitee is not required to prove that the business owner had actual knowledge of the object on the floor. It is sufficient to prove constructive notice. If an ordinary prudent person, given the facts and circumstances the business owner knew or should have known, could have foreseen the risk of danger resulting from such circumstances, the business owner has a duty to exercise reasonable care to avoid the genesis of the danger. *Memco Stores v. Yeatman*, 232 Va. 50 (1986).

The Company argues three points that it says are favorable to its position on the issue of primary negligence.

First, the Company notes that there is no evidence to suggest that it knew the ketchup was on the floor. The Company is correct. However, as *Memco* emphasizes, the duties of the business owner toward an invitee are not limited to instances where it has actual notice of the hazard. Davis acknowledges that her case rests upon the principle of constructive notice.

Second, the Company correctly observes that there is no evidence to establish who put the ketchup there or under what circumstances. Again, however, it is clear that the business owner is not absolved of responsibility for hazards on the floor merely because the substance was put there by others. In fact, foreign objects are often on floors because of the carelessness of others — frequently other invitees.

The Company's third point is that there is insufficient evidence of constructive notice; i.e., there is no evidence that it should have known the ketchup was on the floor. The Company is incorrect. There was uncontroverted evidence from which the jury reasonably could conclude that the ketchup had been there for a considerable period of time and that the Company, using ordinary care, should have discovered and removed it.

For example, there is evidence of the texture of the substance. A witness described it as "dried to the floor." Except where Davis' shoe slid through it, the ketchup was crusty and hard. From this evidence, the jury could conclude that the ketchup had been on the floor for some time. This case is different

from *A. & P. Co. v. Berry*, 203 Va. 913 (1962), the "discolored celery" case. There, the Supreme Court reversed a verdict for the invitee who slipped on a piece of celery in a grocery market. The celery was located three or four inches underneath a shelf and could not be seen by anyone examining the floor in an upright position. The Court stated that the discoloration had no effect on its decision because the invitee "crushing the celery under her foot, as she said she did, clearly could have caused its discoloration ... ." In contrast, no one suggests that Davis caused the ketchup to dry to the floor or to become hard at the edges when she stepped on it. Expert testimony is not necessary to permit a jury to conclude, using common sense and human experience, that ketchup or a ketchup-like substance in such a dried condition had been dropped or spilled on the floor some considerable time prior to the fall. (Also in contrast to *Berry*, the ketchup was in an area where invitees normally walked and had reason to expect would be free of slippery substances.)

Further, this case is distinguishable from *Winn-Dixie Stores v. Parker*, 240 Va. 180 (1990), cited by the Company. There, the evidence established that the floor had been cleaned shortly before the invitee slipped on a snap bean and fell. Here, the Company produced evidence that a maintenance crew was on duty that day and that security personnel walked the premises generally. There are at least five concourses and other public areas in the Mall, according to the exhibits. However, there is no evidence that anyone cleaned or even patrolled the area of Davis' fall since the Mall opened that morning.

Given the types of businesses located in the immediate vicinity of Davis' fall, a grouping of fast food take-out restaurants along a main entrance concourse, the jury could properly conclude that under such circumstances known to the Company, it could have foreseen that the risk of danger was high in this concourse and that it did not exercise reasonable care to avoid or remedy the danger. This, combined with the evidence that the substance had been on the floor for a considerable time, would permit reasonable and fair-minded people to conclude that the Mall was negligent.

## II. *Contributory Negligence*

The Company argues that "if defendant is found to have knowledge or notice of an unsafe condition, the plaintiff too should have this same knowledge or notice and act in a reasonable manner to avoid injury. If she failed to do this, she was negligent as a matter of law."

Such a "catch-22" confronts injured invitees in many slip-and-fall cases. A careful analysis, however, reveals that in those cases, the size, configuration, texture, and location of the foreign object militate against a conclusion that the

invitee, exercising reasonable care for his or her own safety, could not have observed the object.

Here, the substance was a three-inch glob of ketchup. It was located on an off-white floor speckled with several colors, red among them. Ms. Ramsey, working 10-15 feet away, had not seen it although she had been on duty in her kiosk for more than three hours.

In her testimony, Davis conceded that she was not noticing the floor as she walked at the time she slipped, and she did not see the object that caused her to fall. The company would have the court construe this statement as tantamount to an admission by Davis that she was not looking where she was going. It is plain that Davis did not say or mean to say that she was not looking where she was going. She simply said that she was not looking down at the floor at the time of the accident. Such a circumstance does not constitute contributory negligence as a matter of law. No one looks down at the floor and the positioning of each foot on the floor as they walk, and the notion of reasonable care does not require it. Nothing in Davis' testimony indicates a lack of care on her part.

*Conclusion*

Considering all the facts and circumstances of the case, the court is of the opinion that reasonable persons could conclude that the defendant was negligent on Sunday, October 31, 1993, in failing to remove a hazard that it should have discovered in the exercise of reasonable care; that Davis was not contributorily negligent; and that Davis should be compensated for the damages she sustained as a result of the fall.

Accordingly, the defendant's post-verdict motion will be denied and judgment will be entered on the jury verdict.