**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANN PRINDES,
Plaintiff-Appellant,

v.                                                  No. 96-1636

WINN-DIXIE RALEIGH, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-818)

Argued: March 6, 1997

Decided: April 23, 1997

Before MURNAGHAN, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Hunt Roberts, ROBERTS PROFESSIONAL
LAW CENTER, Richmond, Virginia, for Appellant. Robert Barnes
Delano, Jr., SANDS, ANDERSON, MARKS & MILLER, Richmond,
Virginia, for Appellee. **ON BRIEF:** John A. Conrad, Henry C. Spal-
ding, III, SANDS, ANDERSON, MARKS & MILLER, Richmond,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The instant appeal stems from a slip and fall accident in a Winn-Dixie grocery store. While shopping, Ann Prindes slipped on some fluid in the aisle of a local Winn-Dixie store. As a result, she sued Winn-Dixie alleging negligence. Winn-Dixie filed a motion for summary judgment, and the district court granted the motion concluding that no facts existed from which the jury could infer Winn-Dixie's actual or constructive knowledge of the fluid on the floor that caused Prindes' injuries. We affirm.

I.

FACTS AND PROCEDURAL HISTORY

On January 20, 1993, Prindes entered the business premises of Winn-Dixie in Chesterfield County, Virginia. As Prindes was shopping, she stepped in a substance which had formed a small puddle, slipped and fell to the ground thereby sustaining serious injuries.[1]

Both Prindes and Lako Y. Cokes, a customer who was in the area and who came down the aisle just after Prindes fell, testified in their respective depositions that Winn-Dixie stock boys were in the aisle when Prindes fell. In addition, both Prindes and Cokes testified that several boxes were stacked and placed in the aisle. In her deposition, Cokes stated that she observed a liquid substance of a yellowish color that appeared to be fruit juice. Prindes testified that the liquid appeared to be from a juice package and was brownish-orange. Prindes further testified that the liquid was sticky or dried at the edges of the small puddle.

_____

[1] Prindes injured her back, hip, leg and heel in the fall.

2

David Ledford, Prindes' son, testified that he observed a brownish-orange substance in a puddle that appeared to be dried. He further testified that the puddle was readily observable and "hard to miss." Christina Fagan, David Ledford's then fiancee, in her sworn affidavit, testified that she observed the liquid on the bottom of one of Prindes' shoes. Fagan also noted that the spill was streaked.

After Prindes' fall, Ernest Spates, the store manager, arrived. After Spates checked with Prindes about the extent of her injuries, he called an ambulance, and Prindes departed by ambulance to the hospital. According to Cokes, when Spates arrived to assist Prindes, Spates appeared to be trying to conceal the liquid with his foot as he was talking to Prindes. Prindes, Fagan, and Ledford, testified that at no time prior to when Prindes left by ambulance did the Winn Dixie employees attempt to remove the liquid or to warn other customers of the hazard by either posting signs or placing cones where Prindes fell. Spates testified in his deposition that the aisle where Prindes fell had been inspected fifteen minutes before her arrival, and no liquid substance was present in the aisle.

On October 3, 1995, Prindes sued Winn-Dixie alleging in her complaint that she sustained personal injuries in a slip and fall accident while shopping at the Winn-Dixie store located in Chesterfield, Virginia. On November 15, 1995, Winn-Dixie filed its answer denying the allegations of negligence and asserting the defense of contributory negligence. After the conclusion of depositions, on March 8, 1996, Winn-Dixie filed a motion for summary judgment. On April 9, 1996, the district court granted Winn-Dixie's motion for summary judgment. Prindes now appeals.

II.

DISCUSSION

Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court reviews the district court's grant of summary judgment de novo. See Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir.

1993). The parties agree that Virginia law applies in the instant diversity of citizenship action. <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938).

In <u>Winn-Dixie Stores v. Parker</u>, 396 S.E.2d 649 (Va. 1990), the court restated the following well-settled Virginia rule applicable to slip and fall cases such as the instant litigation:

> The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner].

<u>Id</u>. at 650 (quoting <u>Colonial Stores v. Pulley</u>, 125 S.E.2d 188 (Va. 1962)); <u>Safeway Stores, Inc. v. Tolson</u>, 121 S.E.2d 751, (Va. 1961)(store owner is not the insurer of safety of invitees upon its premises). Moreover, in <u>Memco Stores, Inc. v. Yeatman</u>, 348 S.E.2d 228 (Va. 1986), the Virginia Supreme Court stated:

> [The plaintiff] was not required to prove that the defendant had <u>actual</u> notice of a hazardous object on its floor in time to remove it. It was sufficient to prove <u>constructive</u> notice. If an ordinarily prudent person, given the facts and circumstances, [the store] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the store] had a duty to exercise reasonable care to avoid the genesis of danger.

<u>Id</u>. at 231. (Italics in original).

On appeal, Prindes contends that the district court failed properly to apply Virginia law to the facts in the instant case. On the other hand, Winn-Dixie argues that the district court correctly applied the law to determine that no genuine issues of material fact existed, and thus, the district court should be affirmed. Alternatively, Winn-Dixie

4

argues that the district court should be affirmed because Prindes was
guilty of contributory negligence for failing to observe an open and
obvious danger.

The controversy in the instant case centers on whether Winn-Dixie
had constructive knowledge of the existence of the liquid substance
upon which Prindes slipped.**2** The burden rests on Prindes to establish
that Winn-Dixie was negligent and that such negligence was the prox-
imate cause of her injury. The Great Atlantic & Pacific Tea Co., Inc.
v. Berry, 128 S.E.2d 311, 313 (Va. 1962).

Prindes argues that Winn-Dixie's constructive knowledge is dem-
onstrated by: (1) the fact that the liquid substance, apparently fruit
juice, had begun to dry on the edges suggesting that the liquid had
been on the floor for some time, and (2) the fact that several Winn-
Dixie employees were engaged in stocking activity at the location
where Prindes fell on the liquid substance.

On appeal, Prindes primarily attacks the district court's reliance on
Berry arguing that the district court misinterpreted Berry to preclude
any inferences as to the time a substance is on the floor based on the
condition of the substance.

In Berry, the plaintiff accompanied by her husband, went to the
store to buy groceries. Berry, 128 S.E.2d at 312. As the plaintiff
reached for an item, she slipped on a piece of celery, which appar-
ently was located on the floor under the shelf. Id. The plaintiff sued
the store for negligence.

Neither party alleged that the store had actual knowledge of the
piece of celery on the floor, but rather, the case turned on the store's
constructive knowledge. Plaintiff attempted to support her construc-
tive knowledge theory by arguing that the darkened condition of the
piece of celery indicated that the celery had been on the floor for a
period of time. Id. at 313.**3** In denying plaintiff relief, the Virginia

_____

**2** Although Prindes' counsel at oral argument argued that Winn-Dixie
had both actual and constructive knowledge, no evidence exists in

the
record to support an actual knowledge finding.
**3** Plaintiff also claimed that the existence of pieces of paper and one or
two cigarette butts in the same general area of the celery indicated that
an employee of the store had carelessly swept the aisle. <u>Id</u>. at 313.

5

Supreme Court stated that "[t]o hold for the plaintiff on either basis
would require pure speculation and conjecture." Id. at 313. The court
reasoned that the plaintiff could have caused the discoloration of the
piece of celery when she stepped on it; or the celery could have been
dropped by a customer, rather than a store employee. The court also
noted that it was just as likely that a customer could have kicked the
celery under the shelf as by a sweeping store employee. Id. Thus, the
court addressing the probity of the condition of a foreign substance
to demonstrate how long the substance had been present stated:

> In some jurisdictions the courts permit juries to speculate
> upon how long a foreign substance had been on the floor or
> how it got there. Such decisions are in the minority. In these
> minority decisions a description of the substance as "with-
> ered", "old looking," or "grimy," has been held sufficient to
> allow the jury to infer that the substance had been on the
> floor a sufficient length of time to require the defendant in
> the exercise of reasonable care to have known of its pres-
> ence. These decisions represent a liberal expansion of the
> doctrine of "constructive notice" in the law of negligence
> . . . . [M]ost jurisdictions do not follow this view. We reject
> it.

Id. at 313-314 (internal citation omitted).

Relying on Furr's Inc. v. Bolton, 333 S.W.2d 688 (Tx. Civ. App.
1960), Prindes urges the court to restrict the Berry rule to non-liquid
substances. In Bolton the plaintiff slipped on grape juice while shop-
ping for groceries, plaintiff testified that the grape juice puddle was
dried around the edges, and based on her past experience working in
a grocery store, generally, grape juice took 30 minutes to an hour to
dry. While agreeing with the general rule that the withering, blacken-
ing or deterioration of an article is insufficient to determine how long
the article has been on the floor, the court established an exception
when rather than an article, i.e. banana or celery, the situation
involved a liquid.

The court stated:

We think that, here, there can be a proper inference, based upon the testimony referenced above -- that the juice had

6

> been there long enough so that the store keeper should have
> known about it. The very nature of liquids such as these is
> such that it would not have dried around the edges and then
> fallen to the floor and presented the same appearance as an
> object such as a banana or grape could do. The grape or
> banana, or other such, may well have withered and black-
> ened before it got on the floor, but we do not believe that
> juice could dry around its edges and be transmitted to the
> floor in the same condition.

Id. at 689.

Prindes argues that the district court read the Berry rule too broadly
because the Berry case did not involve a liquid. Thus, Prindes argues
that Berry does not prohibit using the condition of a liquid, i.e. dried,
to demonstrate how long the substance had been present.

We need not address whether the Berry rule applies to both non-
liquid and liquid substances because the difficulty with the instant
case is that no one testified about the condition of the liquid at the
time that Prindes fell. Prindes herself admitted that she did not see the
puddle before she slipped. Other testimony offered by her son, David
and his fiancee, Fagan was based on their observations of the liquid
some 30 minutes after Prindes fell. Thirty minutes after Prindes' fall,
both Prindes and her son testified that the liquid had begun to dry
around the edges.

As the district court recognized, Prindes had been writhing in pain
for some thirty minutes before anyone thought to examine the liquid
substance. During the preceding 30 minutes, the liquid could have
begun to dry. Thus, unlike in Bolton, where the plaintiff observed the
liquid immediately or shortly after her fall, no such testimony exists
in the present record. Hence, even if the condition of the liquid could
be used to demonstrate the period of time the liquid had been on the
floor, Prindes's failure to offer any evidence showing the condition
of the liquid at the time of fall, vitiates against a finding of construc-
tive knowledge on Winn-Dixie's part.

As for Prindes' second point, the district court relying on <u>Gauldin v. Winn-Dixie</u>, 370 F.2d 167 (4th Cir. 1996) (applying Virginia law),

7

stated that "the fact that there were employees in the area of the dan-
gerous substance cannot impute knowledge of the substance to the defendant." Thus, the court held that "[b]ecause Prindes is unable to
produce any evidence that would imply the defendant had actual or constructive knowledge of the dangerous substance that caused her fall," summary judgment in favor of Winn-Dixie was appropriate.

Prindes maintains that the district court's reliance on <u>Gauldin</u> was misplaced. In <u>Gauldin</u>, the court refused to impute constructive notice
to the defendant based on the fact that some of the defendant's employees were within eight to ten feet of the spot where the plaintiff
fell. <u>Gauldin</u>, 370 F.2d at 170.**4** The court stated:

> In the instant case there are no such facts to support such a [constructive notice] finding. To permit the jury to conclude that [defendant's employee], who was engaged in his duties eight to ten feet from the point of the accident, should have been on constant alert for a radish on the floor of the aisle which he had so recently swept and to the point of neglect-ing his duty to tend the display counters, would . .. make the defendant an insurer of the safety of its customers.

<u>Id</u>. at 170.

Prindes contends that <u>Gauldin</u> is inapposite because in <u>Gauldin</u> the employees on the scene were more numerous and nearer to the dan-gerous condition, and more importantly, the employees were directly involved in causing the hazard.

Rather, Prindes contends that the instant case is similar to <u>Memco Stores, Inc. v. Yeatman</u>, 348 S.E.2d 228, (Va. 1986). In <u>Memco Stores</u>, the plaintiff sustained injuries when she slipped on a leaf from
a peperomia plant, and fell sustaining injuries. The plaintiff sued Memco Stores, and the jury returned a verdict in her favor finding the
store had constructive knowledge of the leaf's presence. On appeal, the Virginia Supreme Court stated that constructive notice may be established "[i]f an ordinarily prudent person, given the facts and cir-

---

**4** In <u>Gauldin</u>, the plaintiff slipped on a radish located in an aisle at a
Winn-Dixie store.

cumstances Memco knew or should have known, could have foreseen the risk of danger resulting from such circumstances, Memco had a duty to exercise reasonable care to avoid the genesis of the danger."
In affirming the district court's decision to not set aside the verdict,
the court held:

> the jury could have found that Memco, a merchandiser of peperomia plants, should have known that a change in location, temperature, and light would cause such a succulent plant to shed moist leaves; that Memco positions the plant on the furniture display in such a manner that the leaves could and did fall in the aisle; that Memco should have foreseen that this could create a risk of harm to customers using the aisle; that Memco violated its duty to have its premises in reasonably safe condition; and, consequently, that Memco was guilty of negligence which was the proximate cause of the injuries Mrs. Yeatman suffered.

Id. at 231.

Prindes argues that like Memco Stores, a fact finder in the instant case could conclude that "Winn-Dixie and its employees should have foreseen the risks of restocking the canned fruit section and undertaken to police the area to ensure that the premises remained in
reasonably safe condition, either by posting warning signs or policing
the restocking process more vigorously." Appellant's Brief, at 13.

We disagree. All Prindes can arguably demonstrate is that the stock boys were in the aisle at the time that Prindes fell. The stock boys'
presence does not demonstrate in any fashion, except for pure speculation, that the stock boys had knowledge of the liquid substance, and
hence, that knowledge could be imputed to Winn-Dixie. Moreover, in Memco Stores, the employees engaged in an affirmative act of moving the plant; Prindes has pointed to no such evidence in the present
case, thus Memco Stores is readily distinguishable from the case at hand.

9

III.

CONCLUSION

For the reasons expressed above, the judgment of the district court is

AFFIRMED.**5**

_____
**5** Winn-Dixie also argues, alternatively, that Prindes was contributorily
negligent. In light of our conclusion that no negligence has been proven,
no negligence exists to which Prindes could be shown to have been con-
tributorily negligent.