## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Betty E. Kane

v.

Stuckey's of Thornburg, Inc.

September 13, 1999

Case No. CL97-53

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this slip-and-fall case, the defendant property owner asks the court to set aside a jury verdict in favor of its invitee.

*Facts*

On March 27, 1994, the plaintiff, Kane, stopped at Stuckey's, a restaurant and gift shop owned by the defendant near I-95 in Spotsylvania County. Before making purchases, she went to the restroom. Leaving the restroom, she slipped and fell, hitting her head on a baby changer and sustaining other injuries.

Although the rescue squad was summoned, Kane declined to go to the hospital by ambulance. Instead, she was taken to the emergency room by the restaurant manager and his wife. After being treated, she was taken back to the restaurant where she got her car and drove home.

Later, she experienced a variety of symptoms. She has been extensively treated and, according to her evidence, is diagnosed as having a permanent, debilitating condition caused by the accident.

The women's restroom in Stuckey's actually consists of two rooms. An outer room contains a counter with lavatories; a baby changer; a chair; and a trash can. The floor is tile. According to Kane, the floor was "shiny," but the lighting in that room was poor. In an interior room, reached through a

doorway or portal, several individual stalls are located along one wall. The lighting in that area was brighter than in the lavatory area, according to Kane. The floor in that area is tile but of a slightly different pattern and elevation than the floor in the lavatory area.

Kane testified that the floor was dry when she went into the restroom. Her testimony was confirmed by the restaurant manager, who said that he inspected the restroom shortly before Kane arrived and found nothing amiss.

Kane walked through the lavatory room into the interior room and used a stall there. While in the stall, she heard someone in the lavatory room, but she could not say who the person was or what the person was doing. Kane was in the stall about five or six minutes.

Upon leaving the stall, she walked through the interior room, through the doorway that separates the two rooms, and slipped and fell as she stepped into the lavatory area.

According to Kane, the floor of the lavatory room was wet, as if it had been recently mopped. Ester Menard, a customer who went into the restroom and found Kane lying on the floor, testified that the vestibule area outside the restroom and the floor of the lavatory room in the restroom were "very wet." She described the wetness as if the floor had just been mopped in a circular manner without wringing out the mop. She said that Kane's clothes were wet. Brenda Ramsey, an emergency medical technician who responded with the rescue squad, testified that the floor was extremely wet. She said she got her shoes wet and left marks on the floor as she left the restroom.

All of the witnesses testified that there were no warning signs, warning cones, or barriers in the restroom or anywhere in the area.

Robert Kernstein, the restaurant manager, testified that he inspected the restroom shortly before the incident and found the floor dry. He further testified that the floor was dry after the incident except for some water that may have dripped on the floor while Kane was being treated. Marsha O'Dell, a store employee, testified that she saw no appreciable quantity of water on the floor after the incident.

O'Dell also testified that she saw no one mopping the floor before the incident.

There was mopping equipment in the restaurant. Menard testified that after she found Kane lying on the restroom floor, she went to the front of the restaurant and told the manager that the restroom floor was wet and that someone had fallen there. She said that the manager went to another area of the restaurant to get someone who was mopping there to go to the restroom, clean it up, and put up a wet floor sign.

The evidence regarding Kane's injuries was similarly conflicting. Kane's medical witnesses said that her present condition, as well as all of the medical problems that she had experienced since the fall, were caused by the injuries sustained in the fall. Stuckey's medical evidence contradicted Kane's claims both as to causation and as to the severity of her present symptoms.

At the conclusion of a three-day trial, the court instructed the jury with regard to principles of primary negligence and contributory negligence applicable to the case. The jury returned a verdict for Kane.

## Decision

### A. *Primary Negligence*

A business owner has the duty to use ordinary care to keep the premises in a reasonably safe condition for an invitee's use consistent with the invitation. Further, it has the duty to warn an invitee of any unsafe condition which it knows or by the use of ordinary care should know about, except that it has no duty to warn of a condition that is open and obvious. The business owner is not a guarantor of an invitee's safety. See 13B M.J., *Negligence*, § 18; Friend, *Personal Injury Law in Virginia*, § 16.4 (2d ed. 1998).

Specific to cases involving foreign substances on the floor, if an ordinary prudent person, given the facts and circumstances the business owner knew or should have known, could have foreseen the risk of danger resulting from such circumstances, the business owner has a duty to exercise reasonable care to avoid the genesis of the danger. *Memco Stores v. Yeatman*, 232 Va. 50 (1986).

Stuckey's argues that Kane failed to prove negligence. The basis for that argument is that no one saw a Stuckey's employee mopping the restroom floor.

Negligence can be proven by circumstantial evidence as well as by direct evidence. Jurors are entitled to use their common sense, and they may draw reasonable inferences from facts adduced.

Kane testified that the floor was dry when she entered the restroom. In a roundabout way, Kernstein confirmed that assertion. Kane testified that she was in a restroom stall for about five or six minutes, during which time she heard someone in the other portion of the restroom. Kane's evidence established that there was mopping equipment in the restaurant and there were employees who did such chores present in the restaurant at the time. Kane further testified that when she exited the stall area and went into the outer portion of the restroom, she slipped and fell. Once she was on the floor, she

discovered that the floor was very wet, as if it had just been mopped. That the floor was very wet, as if it had just been mopped, was confirmed by two independent witnesses who arrived on the scene shortly after Kane fell.

Although Stuckey's presented witnesses whose testimony conflicted with Kane's evidence regarding the condition of the floor after her fall, the jury was entitled to believe Kane's evidence on that point. Accepting Kane's evidence, the jury then was entitled to infer that a Stuckey's employee had mopped the floor of the outer portion of the restroom while Kane was in a stall, leaving the tile floor extremely wet. The jury also could use its common sense and collective human experience, as well as the evidence before it, to reason that wet bathroom tile can be extremely slippery.

Under the facts of this case, drawing such inferences does not amount to speculation or conjecture. The description of the water on the floor offered by Kane's witnesses excludes other explanations, such as a sloppy customer washing her hands, a leaky lavatory, or — the one offered by Stuckey's — post-accident dripping of water while Kane was being treated.

Notice is not an issue in this case. The jury could reasonably conclude that any mopping in the restroom was done by a Stuckey's employee, not by a customer or a stranger. As noted above, employees who would attend to such chores were present at the time of the incident, and there was mopping equipment out in the restaurant. Although Stuckey's witnesses denied that anyone had mopped the restroom floor while Kane was there, the jury reasonably could have believed otherwise, based on the evidence and proper inferences drawn from that evidence.

For these reasons, the court cannot hold that Kane failed to prove negligence as a matter of law.

## B. *Contributory Negligence*

Over Kane's objection, the court allowed the jury to consider whether Kane was contributorily negligent.

Stuckey's contends that Kane was contributorily negligent as a matter of law. If there was water on the floor, Stuckey's argues, it was so open and obvious that Kane should have seen it.

Kane's evidence contradicts Stuckey's thesis. According to her evidence, the tile floor in the lavatory room was shiny when she entered the restroom. Further, the room was dimly lit, in contrast with the interior room where the stalls were located. To re-enter the lavatory room where she slipped, Kane had to go through a doorway, or portal, which obstructed her view until she stepped through it. She said that she had to step through the doorway at an

"odd angle" because of the location of the baby changer and the trash can. The photographs of the restroom do not belie Kane's testimony.

The fact that Menard saw the water on the floor as she entered the restroom is not dispositive. She entered the lavatory portion of the restroom from another direction — from the restaurant — and when she opened the door, light from the restaurant shone into the restroom. Further, she had been forewarned by the water on the floor in the vestibule just outside the restroom.

Stuckey's concedes that the evidence was "clearly in conflict." The court is of the opinion that from that conflicting evidence, the jury reasonably could conclude that the water on the floor was not open and obvious to Kane as she walked from the stall area through the doorway into the dimly-lit lavatory area, and thus Stuckey's had a duty to warn her of the hazardous condition.

According to the uncontradicted evidence, no warnings were posted.

*Damages*

Kane's evidence regarding the cause of her condition and the severity of her injuries was vigorously disputed. Nevertheless, it was credible and the jury was entitled to accept it.

In itemizing her damages, Kane presented medical bills totalling $43,766.73. Stuckey's disputed the causal connection between Kane's fall in Stuckey's and the various medical treatments represented by those bills. Stuckey's contends that none of Kane's medical experts testified that the fall in Stuckey's was the causative agent of those expenses. The court disagrees. Taking the medical evidence as a whole, it is clear that there was sufficient basis for the jury to conclude that all of Kane's medical problems, and her medical treatments for those problems, subsequent to her fall in Stuckey's are causally related to the injuries she sustained in that fall.

If the author of this opinion had been a member of the jury, he probably would not have accepted the proposition that all of Kane's subsequent medical problems can be traced to her fall in Stuckey's because of the seeming remoteness of some of those problems and complaints. However, it is axiomatic that a trial judge cannot substitute his or her personal judgment for that of a properly constituted and properly instructed jury. Kane presented qualified medical experts who testified about the causal connection between the fall and her subsequent medical problems, and the jury was entitled to accept that evidence instead of the conflicting medical evidence offered by Stuckey's.

Likewise, Kane's evidence regarding her lost wages was disputed. The jury was not required to speculate; it could have accepted Kane's testimony,

bolstered by her other evidence, and reached a fair estimate of that item of damages.

Whether the jury's general verdict represents any sum for future lost wages is unknown. However, Kane presented evidence that she is unable to work. This evidence, combined with evidence regarding her work history, was sufficient to enable the jury to conclude that she may reasonably be expected to sustain lost wages in the future and to arrive at a fair estimate of that item of damages.

Stuckey's contends that the instruction regarding Kane's life expectancy improperly invited the jury to calculate Kane's future lost wages through age 81. The court disagrees. The life expectancy instruction was given, without objection, to enable the jury to consider the statutory life expectancy figure, "along with any other evidence relating to [her] health, constitution, and habits," in determining her *life expectancy*, not her projected work life. Where a plaintiff has suffered a permanent injury, the jury is entitled to consider the plaintiff's life expectancy in determining various items of damages claimed, such as pain and suffering, inconvenience, mental anguish, and duration of the effect of the injuries upon the plaintiff's health. No one, especially the court, suggested to the jury that the life expectancy figure was to be used to establish Kane's future wages lost, and there is no basis for assuming that the jury did so.

Next, Stuckey's contends that the court allowed Kane to take contradictory positions regarding the issue of aggravation of a pre-existing condition. Stuckey's misconstrues the manner in which that issue arose and the manner in which it was submitted to the jury. Kane has consistently contended that her fall at Stuckey's did not aggravate a pre-existing condition. After Stuckey's offered evidence of injuries and conditions that predated the fall and offered evidence in an attempt to establish a causal relationship, Kane tendered a proper instruction that informed the jury that *if it found* that Kane had a condition before the accident that was aggravated by the accident, she would be entitled to recover for the aggravation but not for the pre-existing condition. Kane's action in tendering that instruction did not amount to a "change in position" nor was it inconsistent with the position that she had maintained throughout the litigation.

Finally, Stuckey's complains that the jury had no basis for awarding prejudgment interest from January 1, 1995. Virginia Code § 8.01-382 allows a jury to provide for interest "on *any* principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." (Emphasis added.) The statute allows prejudgment interest on an unliquidated claim. *Beale v. King*, 204 Va. 443 (1963). The commencement date fixed by the jury

had a rational basis. January of 1995 was about the time that Kane began to experience significant, lasting symptoms and to incur medical expenses, according to her evidence. The verdict sheet, which permitted the jury to award prejudgment interest, was prepared by the court as an alternative to one offered by Kane, and its form was not objected to by Stuckey's.

In order to award a verdict of the size returned by the jury, the jurors had to accept unanimously Kane's medical evidence in its entirety, including the reasonable deduction from the evidence that Kane suffered permanent debilitating injuries that will cause pain, discomfort, and disability for the rest of her life. While reasonable people might disagree with the amount awarded, the court cannot conclude that the verdict is excessive as a matter of law.

## Conclusion

For the reasons explained, the post-verdict motions filed by Stuckey's will be denied, and the court will enter judgment on the jury's verdict.