**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1424**

ELLEN B. THOMAS,

Plaintiff - Appellant,

v.

OMNI HOTELS MANAGEMENT CORPORATION,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Elizabeth Kay Dillon, District Judge. (5:15-cv-00086-EKD-JCH)

Argued: May 9, 2018                                    Decided: August 2, 2018

Before WILKINSON and NIEMEYER, Circuit Judges, and Richard M. GERGEL, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Gergel wrote the opinion in which, Judge Wilkinson and Niemeyer joined.

**ARGUED:** Gregory Lee Lyons, LICHTENSTEIN LAW GROUP PLC, Roanoke, Virginia, for Appellant. Gregory Franklin Holland, SETLIFF & HOLLAND, PC, Glen Allen, Virginia, for Appellee. **ON BRIEF:** John E. Lichtenstein, Carrol M. Ching, Joanna M. Meyer, LICHTENSTEIN LAW GROUP PLC, Roanoke, Virginia; R. Creigh Deeds, R. CREIGH DEEDS, P.C., Hot Springs, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

GERGEL, District Judge:

In this appeal dealing with premises liability, we consider whether the district court properly granted Defendant Omni Hotels Management Corporation ("Omni") summary judgment of Plaintiff Ellen Thomas's ("Thomas") claims arising from personal injuries sustained when she slipped and fell near a fountain at a hotel owned and managed by Omni. For the reasons stated below, we affirm the district court's order.

I.

On November 12, 2013, Thomas and her husband arrived as guests at the Omni Homestead Resort (the "hotel") in Hot Springs, Virginia. J.A. 102. The hotel contained a decorative water fountain installed in the center of a partially enclosed outdoor walkway that connected the hotel and its spa building. J.A. 428. The fountain pumped water up a pedestal to cascade down from a smaller bowl into a larger reservoir. J.A. 358. The drop from the bowl to the reservoir was between thirty-four and forty inches, and the reservoir was approximately one foot deep and five feet wide. J.A. 27, 411–12, 458, 462–63. The outdoor walkway around the fountain was composed of white cement-like material. J.A. 359. The walkway and fountain were partially covered by a roof, and partially surrounded by the spa building and a gate. J.A. 349–50, 395, 412.

On the morning of November 13, 2013, Thomas and her husband left the hotel between 8:30 and 8:45 a.m. to walk into town for breakfast. J.A. 108. To exit the hotel, they walked through the gate, down the outdoor walkway where the fountain was located, and through the spa building. J.A. 251–52. As they passed the fountain, Thomas and her husband noticed icicles hanging from it. J.A. 108, 255. They did not notice at that time

2

any ice or water at or near the walkway surrounding the fountain. J.A. 116, 270. On their walk into town, Thomas's husband observed a sign showing that the temperature was 22 degrees Fahrenheit. J.A. 252.

The Thomases returned from breakfast shortly before 9:30 a.m. and retraced their route through the hotel spa and onto the outdoor walkway where the fountain was located. J.A. 114–16. Thomas again observed icicles hanging from the fountain as she approached it. J.A. 115–16. As Thomas walked past the fountain, she slipped and fell. J.A. 119. Thomas told her husband at that time that she slipped on ice; neither Thomas nor her husband saw ice on the walkway before her fall. J.A. 124–25, 278. Thomas and her husband returned to the hotel lobby where an Omni employee arranged to transport Thomas to the hospital. J.A. 133–34, 280. As a result of the fall, Thomas injured her right hand and wrist, and fractured a rib. J.A. 473. At about 10:00 a.m., the hotel's Director of Loss Prevention inspected the area surrounding the fountain and observed ice on the walkway where Thomas had fallen. J.A. 407–409.

Thomas filed suit against Omni in the Bath County Circuit Court, claiming that Omni was negligent in its inspection and maintenance of the walkway around the fountain. J.A. 9. Omni removed the case to the United States District Court for the Western District of Virginia based on diversity jurisdiction. After completion of discovery, Omni filed a motion for summary judgment, arguing that Thomas's allegations did not create a genuine dispute of material fact of whether Omni had actual or constructive notice of the walkway's dangerous condition. J.A. 13–26. The district court granted summary judgment for Omni, finding that Thomas failed to create a

3

genuine dispute of material fact of whether Omni had actual or constructive notice of icy conditions or water escaping from the fountain at or near the walkway at any time prior to Thomas' fall. J.A. 566–76.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing the evidence in the light most favorable to the nonmoving party. *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012).

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward ex rel. Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 254 (Va. 2012). Virginia law imposes a special duty of care on innkeepers, which requires them to "use the utmost care and diligence of very cautious persons" and holds them "liable for the slightest negligence which human care, skill, and foresight could have foreseen and guarded against." *Norfolk & W. R. Co. v. Birchfield*, 54 S.E. 879, 883 (Va. 1906) (internal quotation marks omitted).

An innkeeper under Virginia law is not, however, strictly liable for any injury to a guest on its premises. In order to recover, a plaintiff must show that the innkeeper had knowledge, actual or constructive, that a defect existed, and that such defect created an unsafe condition." *Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E.2d 157, 161 (Va. 1977); *see also Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 435 (Va. 2006) (reversing lower court to find innkeeper liable for third party's intentional assault on guest in hotel parking lot where police previously notified hotel that guests were at "specific imminent harm").

4

A plaintiff can demonstrate the presence of an innkeeper's constructive knowledge in a number of ways. Constructive knowledge "may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its [unsafe] condition." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 454 (4th Cir. 2004) (alteration in original) (internal quotation marks omitted). Or constructive knowledge may be shown where the innkeeper's own actions created a reasonably foreseeable dangerous condition. *See, e.g.*, *Harrison v. Kroger Co.*, 737 F. Supp. 2d 554, 557 (W.D. Va. 2010) (granting summary judgment for Kroger grocery store where customer who slipped and fell on liquid "offer[ed] no evidence to establish that any affirmative act by Kroger caused" the liquid to form).

## III.

### A.

The record evidence did not demonstrate any prior actual knowledge by Omni of the formation of icy conditions or the presence of escaping water accumulating on the walkway near the fountain. To the contrary, the uncontested record evidence was that Omni had not previously received any reports or observed water escaping from the fountain or ice forming on the walkway near the fountain. J.A. 428, 438, 441. Since there is no evidence of prior actual knowledge by Omni of water forming on the walkway near the fountain, Plaintiff seeks to infer notice of dangerousness from certain climate conditions existing on the day of the fall. The evidence shows that the temperature that morning had fallen to 22 degrees Fahrenheit and that icicles had formed on the fountain itself. J.A. 252, 259. These facts certainly demonstrate the conditions upon which ice

5

could form generally, but they are not sufficient to impose actual or constructive notice to Omni that ice would form on the walkway beside the fountain that morning when neither ice nor standing or escaping water had previously been observed in that location.

Plaintiff next contends that because ice takes time to form, a reasonable jury could conclude that the ice Thomas slipped on existed for a sufficient period that it would have been discovered by Omni upon reasonable investigation. J.A. 572–73. This argument fails because, again, Virginia courts apply ordinary constructive notice principles to the presence of a dangerous condition, such as ice, to require evidence of how long that specific hazard was present. *See, e.g.*, *Adkinson v. Frizzell*, No. 1:11CV00098, 2012 WL 4127617, at \*3–4 (W.D. Va. Aug. 14, 2012) (granting summary judgment for premises owner where plaintiff was "unable to show *when* the ice formed" and because he was "unable to show when a defect occurred on the premises, he has not made a prima facie case") (emphasis in original). There must be record evidence to show when the dangerous condition first arose because the "[a]ppearence of an item cannot be used to infer that it had been on the floor long enough" to create constructive notice. *Powers v. Wal-Mart Stores, Inc.*, No. CIVA 2:05CV00070, 2006 WL 2868320, at \*4 (W.D. Va. Oct. 5, 2006); *see also Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962).

The record here contains no evidence indicating when ice may have formed near Omni's fountain prior to Thomas's fall. In the absence of prior notice of a dangerous condition caused by the fountain and no evidence when the icy condition around the fountain arose prior to Thomas' fall, the presence of ice at the time of the fall is not sufficient to demonstrate that with reasonable diligence Omni staff should have

6

discovered the icy condition before Thomas suffered her injury. *See, e.g.*, *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 651 (Va. 1990) (setting aside jury verdict for plaintiff who slipped on vegetable on supermarket floor because without "any showing of the length of time [the bean] may have been there" it "is just as logical to assume that it was placed on the floor an instant before [Parker] struck it as it is to infer that it had been there long enough that [Winn-Dixie] should, in the exercise of reasonable care, have known about it") (internal quotations omitted, alterations in original). As a result, a jury could reach a conclusion about how and when this ice appeared on the walkway only by impermissible "speculation and conjecture." *Great Atl. & Pac. Tea Co. v. Berry*, 128 S.E.2d 311, 313 (Va. 1962) (rejecting plaintiff's argument that celery's discoloration was evidence it had been on supermarket floor for long enough to impute constructive notice, because "it is just as probable that it had been there for a short period of time as for a lengthy period").

Thomas asks the court to accept a series of inferences to conclude when the ice she believes she slipped on escaped from the fountain and formed into ice. Specifically, Thomas infers that (i) the ice on the walkway was formed by water blown out of the fountain by the wind, because conditions were windy as measured at the local airport at a significantly higher elevation, (ii) temperatures dropped below freezing the night before, and the fountain was running in the freezing temperature, (iii) ice takes time to form and this ice appeared thick approximately thirty minutes after Thomas's fall, and therefore (iv) Omni would have discovered the ice before the fall had it looked. Appellant's Br. at 20. Here, the ruling from the District Court for the Eastern District of Virginia in

7

*Jefferson v. Regal Cinemas*, C.A. No. 3:10CV166, 2010 WL 3894127 at \*4 (E.D. Va. 2010), is instructive. In *Jefferson*, the Plaintiff slipped on a popcorn bag inside a movie theater and attempted to establish constructive notice through a chain of inferences:

> Although Jefferson contends that the popcorn bag was on the floor for a period of seventeen hours prior to Jefferson's injury, the record does not support this assertion. Jefferson argues that no one entered Auditorium 15 between the last showing on December 15, 2010 and the 2:35 p.m. showing of *Hitman* on December 16, 2010 aside from Jefferson and his family. Because Jefferson and his family did not purchase any popcorn, Jefferson argues that the popcorn bag must have been left by a customer the evening before. Jefferson further contends that because six inspections of the theater should have been performed according to routine procedure and all six inspections missed the popcorn bag, Regal was on constructive notice of the defective condition. Jefferson also wants the Court to infer that he and his family did not see the popcorn bag on the floor in the corridor upon their entrance into Auditorium 15 because the lights were dim and the bag blended into the carpet pattern.

The *Jefferson* court found that these "assertions of 'material facts' constitute inferences" insufficient to demonstrate how long the hazard existed. *Id*. at \*5. Here, Thomas' argument falls short because, as in *Jefferson*, "genuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Id*. (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984)).

Last, Plaintiff's argument that Omni failed to inspect the walkway is unavailing without having demonstrated that this ice existed long enough that Omni would have discovered it prior to Thomas's fall. *See, e.g.*, *Moran Towing & Transp. Co.*, 409 F.2d 961, 963 (4th Cir. 1969) (noting that "a finding of negligence in failing to send an

8

inspector . . . is dangling, for it is unaccompanied by any finding that such an inspector, exercising due care, should, or even might, have found any deficiency which had any proximate relation" to the defect); *City of Richmond v. Hood Rubber Prods. Co.*, 190 S.E. 95, 100 (Va. 1937) (noting that the crucial inquiry for constructive notice is "the susceptibility to discovery and the length of time the defect may exist that would be sufficient to charge . . . notice").

B.

Plaintiff separately contends that Omni was constructively aware of the slippery walkway because Omni created the dangerous condition by positioning the fountain on the white cement-like walkway and running the water in sub-freezing temperatures. Appellant's Br. at 28-33. When a premises owner affirmatively creates a dangerous condition, Virginia courts apply a foreseeability standard to charge the owner with constructive knowledge of a reasonably foreseeable hazard caused by its own conduct. *See, e.g.*, *Austin v. Shoney's, Inc.*, 486 S.E.2d 285, 288 (Va. 1997) (premises owner is "charged with constructive knowledge of the risk because it had a duty to exercise reasonable care to avoid the genesis of the danger" it created).

Here, as the district court noted, there is no reliable evidence in the record to show what caused the icy conditions near the fountain walkway on the morning Thomas fell. J.A. 573–75. For example, there are no facts to support a finding that by placing this fountain in a partially covered and enclosed outdoor area, or by failing to turn the water off in cold temperatures, Omni caused water or ice to escape from the fountain and accumulate on the surrounding walkway at the time of Thomas's fall.

9

It is similarly unclear from the record how ice on the walkway was foreseeable to Omni. The uncontested testimony of Omni employees is that they had never observed the fountain causing splashes, condensation, or moisture on the surrounding walkway, nor received complaints of water or ice on the walkway. J.A. 371, 378, 412, 438, 441; *cf. O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (danger foreseeable when heavy bolt of fabric leaning against a table, in plain view of employee and in violation of store's safety policy, fell and injured customer).

The Supreme Court of Virginia's ruling in *Memco Stores, Inc. v. Yeatman* is instructive on both affirmative conduct and foreseeability. 348 S.E.2d 228 (Va. 1986). There, the court found the evidence presented sufficient to show that the store had constructive notice of a foreseeable slipping hazard caused by its own affirmative conduct. By actively moving plants known to shed their leaves when stirred, it was foreseeable to the store that a slippery leaf could fall to the floor, requiring the store to use reasonable care to avoid this or to remove the leaf from a customer's path:

> Memco, a merchandiser of peperomia plants, should have known that a change in location, temperature, and light would cause such a succulent plant to shed moist leaves; that Memco positioned the plant on the furniture display in such a manner that the leaves could and did fall in the aisle; that Memco should have foreseen that this would create a risk of harm to customers using the aisle; that Memco violated its duty to have its premises in a reasonably safe condition; and, consequently, that Memco was guilty of negligence which was the proximate cause of the injuries Mrs. Yeatman suffered.

10

*Id.* at 231. Here, by contrast, the record does not contain evidence that Omni actively caused the formation of icy conditions on the walking surface for guests, or that this slipping hazard was foreseeable to Omni.

## IV.

The record evidence does not contain evidence of Omni's actual or constructive knowledge of the risk of icy conditions on the walkway adjacent to its fountain or that Omni's affirmative conduct caused the creation of a foreseeable hazard. Consequently, the district court's grant of summary judgment was appropriate and that judgment is

*AFFIRMED*.