Present:  All the Justices

DORIS AUSTIN, ADMINISTRATRIX
OF THE ESTATE OF JANE
PAULINE AUSTIN
                          OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 961236                                JUNE 6, 1997

SHONEY'S, INC.

              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Everett A. Martin, Jr., Judge


     In this appeal we consider whether the trial court properly

sustained the defendant's renewed motion to strike the

plaintiff's evidence in a slip and fall case after the jury was

unable to return a verdict.  Under well settled principles, we

view the evidence and the inferences reasonably raised thereby in

the light most favorable to the plaintiff, whose evidence was

stricken.  Meador v. Lawson, 214 Va. 759, 761, 204 S.E.2d 285,

287 (1974).

     Jane Pauline Austin, 70 years old, was dining with her

family on the morning of October 16, 1993 at a restaurant in

Norfolk owned by Shoney's, Inc.  Austin wore a prosthetic limb on

her left leg as a result of a below-the-knee amputation and used

a cane with a four-pronged foot for support when walking.  After

completing the meal, Austin and the others walked down an aisle

between two rows of booths toward the front of the restaurant to

exit.

     As Austin proceeded down the aisle, her cane slid forward on

the floor and then went into the air, causing her to lose her

balance and to fall.  As a result, she suffered broken bones in

her left shoulder and left leg.  She was treated for these

injuries at a local hospital and was later transferred to a hospital nearer her home in Pittsburgh, Pennsylvania. Austin remained hospitalized there and died five months later from causes not directly related to her fall.

In September 1994, Doris Austin, Austin's daughter-in-law and personal representative of her estate, filed the present action alleging that Austin's fall was directly and proximately caused by Shoney's negligent failure to keep the floor of its dining area in a dry and safe condition. After extensive pre-trial proceedings, a jury trial was commenced in the trial court on November 15, 1995. Testimony concerning various contested issues was received over a period of four days of trial. However, we will recite only that evidence which is relevant to the dispositive issues of this appeal.

The floor of the restaurant's dining area consists of red quarry tile laid in a brickwork pattern. Shoney's employed two night porters to clean the floors of its dining area and other areas of the restaurant each night. Larry Horton was the regular weekday night porter; James Crawford was the weekend night porter. Crawford testified that he regularly used one of two commercial cleaning products to clean the restaurant's floors: Quarry Tile Cleaner WP-329 and Green Liquid Detergent WP-522, a dishwashing detergent. Horton testified that he always used the dishwashing detergent.

Both Crawford and Horton conceded that they used levels of concentration of detergent to water considerably lower than was recommended by the manufacturer for cleaning a quarry tile floor.

In addition to regular cleaning with diluted detergent, the instructions for cleaning quarry tile floors with the quarry tile cleaner called for weekly "shock treatments" with full strength cleaner.  This was not done.  Plaintiff's expert witness testified that the concentrations of the two cleaning products used by the night porters would not effectively remove grease from the floors or emulsify grease picked up by the mops.

Horton testified that it was his practice to clean the kitchen floor first and then the dining area floor, rinsing his mop and changing the water in his mop bucket six to eight times a night.  Crawford testified that it was his practice to clean the dining area floor first and then to mop the kitchen floor.  Each further testified that they used the same mop to clean the dining area floor and the kitchen floor.  The same mop was used by both night porters over several nights until it required replacement.

The night before the accident, Crawford was the night porter.  He testified that, after completing his duties, he inspected the floor to confirm that there were "no wet spots or anything like that."  The restaurant manager testified that when she inspected the dining area floor on the morning of the accident, "[t]here were no problems.  The [floor] was clean."

William Meadows, another restaurant patron on the morning of the accident, testified that 20 to 30 minutes prior to the accident he slipped twice in the same area where Austin fell.  Meadows examined the floor and found a "slippery residue on the floor. . . .  It wasn't [any] type of water, it was more [a] petroleum residue."  Meadows further testified that just before

Austin fell, he saw her cane "jet[] from her . . . [l]ike it had hit something slick."  After Austin fell, Meadows reexamined the floor where she had fallen and he had slipped.  He estimated that an area about four feet wide and four to six feet long was slick with a petroleum residue.  Doris Austin testified that she examined the floor after Austin fell and found a "greasy film, like a slick greasy film-like substance" on the floor.

At the conclusion of the plaintiff's case-in-chief, Shoney's made a motion to strike the evidence on the ground that the evidence did not establish that there was an unsafe condition which was the cause of the accident, or that if such a condition existed, it was created by Shoney's or known by Shoney's to exist.  Although stating that "the evidence of constructive notice in this case is awfully thin," the trial court overruled the motion.

Shoney's then introduced the testimony of various employees of the restaurant that they did not observe any grease on the floor the morning of the accident or otherwise have reason to suspect that the floor was slippery.  Shoney's also called a representative of the manufacturer of the products used to clean the floor as an expert witness.  The representative testified that the two products in question were appropriate for cleaning and removing grease from floors, but that the dishwashing liquid "would not be our first recommendation" for cleaning a quarry tile floor.  Another expert called by Shoney's testified that the cleaning methods used by the night porters were "well within any set of [industry] guidelines," but conceded on cross-examination

that the procedures used were "not exactly what I would have recommended."

At the conclusion of all the evidence, Shoney's renewed its motion to strike. The trial court took the matter under advisement and permitted the case to go to the jury. After several hours the jury informed the trial court that it could not reach a verdict. The trial court directed the jury to continue to deliberate in an effort to reach a verdict. After several more hours of deliberation, the jury was unable to reach a verdict and was discharged by the trial court. Shoney's again renewed its motion to strike. Following submission of briefs by the parties, the trial court granted the motion and entered summary judgment for Shoney's. Rule 1:11. We awarded an appeal to the plaintiff.

The standard under which a trial court should review the evidence adduced at trial before granting a motion to strike the case at the end of a plaintiff's evidence is well settled under prior decisions of this Court. That standard requires the trial court to accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a jury might draw therefrom which would sustain the plaintiff's cause of action. The trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense. See, e.g., Williams v. Vaughan, 214 Va. 307, 309-10, 199 S.E.2d 515, 517-18 (1973); Esso Standard Oil Co. v. Williams, 202 Va. 362, 365-66, 117 S.E.2d 93, 95 (1960); Smith v. Carpenter,

198 Va. 91, 93, 92 S.E.2d 275, 277 (1956).

When a motion to strike the plaintiff's evidence is made or renewed at the end of all evidence, the trial court may also consider the evidence presented during the defendant's case in considering the motion. Kendrick v. Vaz, Inc., 244 Va. 380, 384 n.*, 421 S.E.2d 447, 450 n.* (1992). Nonetheless, it must still view the evidence and all its reasonable inferences in the light most favorable to the plaintiff. Id. at 384, 421 S.E.2d at 450; see also Estate of Taylor v. Flair Property Associates, 248 Va. 410, 414, 448 S.E.2d 413, 416 (1994). When the trial court considers a renewed motion to strike after the jury has been unable to return a verdict, it should sustain the motion only if it "is of opinion that it erred in denying the motion" made before the case was submitted to the jury. Rule 1:11. Thus, the standard for granting a motion to strike in such cases is identical to that for granting such motions made during trial.

The evidence taken in the light most favorable to the plaintiff in this case shows that the area where Austin fell was covered with a grease-like film that rendered the surface slippery. Shoney's, however, contends that the evidence failed to show what caused the grease-like film to be there and, thus, that the plaintiff failed to meet her burden of production as to that element of her case. Shoney's further contends that its motion to strike was properly sustained since the evidence failed to show that Shoney's was on notice as to the dangerous condition of its floor. We disagree.

The evidence favoring the plaintiff shows that Shoney's

employees failed to follow the recommended procedures for cleaning a quarry tile floor. The procedures used in cleaning the floor would not have been adequate to remove grease from the floor's surface or to emulsify grease picked up by the mops elsewhere in the restaurant. The inference that the grease-like film was placed on the floor by these inadequate cleaning procedures does not defy logic or common sense. The evidence showed that the grease-like film covered an area of 16 to 24 square feet. The logical inference is that it was placed there by the movement of the mops over that area of the floor. Moreover, nothing in the record suggests that some other foreign substance was found in that area that would account for the slippery condition of the floor over such a large area. Indeed, both the restaurant manager and the waitress responsible for the area where the fall occurred testified that there were no spills, food or other debris visible on the floor before Austin's fall. Thus, for purposes of reviewing a renewed motion to strike, the trial court should have accepted as true the inference which supported the plaintiff's prima facie case.

Similarly, with respect to the issue of notice, plaintiff need only show that under some reasonable inference from the evidence Shoney's duty to warn against or remedy the dangerous condition had been triggered. The plaintiff was not required to prove that Shoney's had actual notice of the dangerous condition of its floor. If the jury accepted the plaintiff's theory that the grease-like film was the result of the improper cleaning methods, the hazardous condition was affirmatively created by the

property owner. Thus, Shoney's is charged with constructive knowledge of the risk because it "had a duty to exercise reasonable care to avoid the genesis of the danger." <u>Memco Stores, Inc. v. Yeatman</u>, 232 Va. 50, 55, 348 S.E.2d 228, 231 (1986).

Finally, Shoney's contends that the plaintiff failed to show that Austin's fall was caused by the condition of the floor. In doing so, Shoney's relies primarily on the assertion that Austin herself never stated that her fall had been caused by the slippery substance on the floor. The testimony of Meadows that Austin's cane "jetted" out from under her suddenly and without warning just before she fell is sufficient to raise the inference that Austin's fall was caused by the condition of the floor.[*]

For these reasons, we hold that the trial court erred in sustaining Shoney's motion to strike the plaintiff's evidence. Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO joins, dissenting.

Only through pure conjecture may one conclude that the

---

[*]Shoney's made frequent references on brief and at oral argument to evidence tending to show that Austin's cane "wobbled" and that her prosthetic limb was not properly attached at the time of her fall. While such evidence may tend to detract from the weight given to the plaintiff's theory of the case, the standard for reviewing a motion to strike does not permit a balancing of the weight of conflicting evidence or the inferences drawn therefrom.

greasy film was on the floor through improper cleaning. Certainly that is possible; however, it is just as likely that the film collected from other causes, such as an unobserved spillage by another customer occurring after the floor had been cleaned.

The majority says that "nothing in the record suggests that some other foreign substance was found in that area that would account for the slippery condition of the floor over such a large area." This argument loses sight of the fact that in a case such as this the plaintiff, not the defendant, has the burden to prove negligence; the defendant does not have to "account" for the happening of an accident.

Furthermore, there is no evidence that defendant had actual or constructive notice of the condition. No customer had reported "anything wrong with the floor" to defendant's employees during the hours immediately preceding the accident. Moreover, the record shows that Meadows, who slipped 20-30 minutes before the accident, did not tell any of the defendant's employees about the slippery condition prior to the fall by plaintiff's decedent.

In addition, there was no evidence to show how long the slippery condition existed. The proof merely showed that a defect was present on the floor of defendant's premises and that it caused the decedent's injury; this does not support a finding of constructive notice.

Therefore, I would affirm the trial court's judgment.