COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia


MICHAEL F. O'CONNOR

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1157-19-4                 JUDGE WESLEY G. RUSSELL, JR.
                                                      MARCH 17, 2020
STEPHANIE SHEA, F/K/A
  STEPHANIE SHEA O'CONNOR


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Lawrence D. Diehl (Barnes & Diehl, P.C., on briefs), for appellant.

John K. Cottrell (James Ray Cotrell; Cottrell Fletcher & Cottrell, PC,
on brief), for appellee.


        Michael F. O'Connor (husband) appeals the trial court's denial of his motion to reduce his

monthly spousal support obligation to Stephanie Shea (wife). He specifically challenges the trial

court's conclusion that there had not been a material change in circumstances that would warrant the

requested reduction. Husband also appeals the trial court's award of attorney's fees to wife. For the

reasons that follow, we affirm the judgment of the trial court as it relates to the issue of spousal

support, but reverse its award of attorney's fees to wife and remand the matter to the trial court for

further proceedings consistent with this opinion.

                                        BACKGROUND

        After over twenty-five years of marriage, the parties separated in March 2014 and were

divorced by final decree entered November 10, 2015.[1] The decree awarded the divorce based on

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Husband remarried on January 1, 2016.

the parties "hav[ing] lived separate and apart without cohabitation and without interruption, intentionally, for more than one year." The decree incorporated a property settlement agreement (PSA) that the parties had executed in October 2015.

Pertinent here, the parties' PSA provided that the marital home would be sold and the proceeds divided evenly. The parties also owned a beach house on land they leased in Delaware; per the PSA, wife was entitled to live there "or rent it to others" until it sold, and wife had the option of buying husband's interest in it. The PSA recited that in reaching the property stipulations, the parties considered the factors contained in Code § 20-107.3.[2]

The parties further agreed that husband would pay wife $18,500 in monthly spousal support "until modified by a court of competent jurisdiction based upon a material change in circumstances justifying such change." The PSA did not specify what would constitute a "material change" but noted that, in arriving at the support award, the parties had considered the factors enumerated in Code § 20-107.1[3] and wife's "reasonable requirements, giving due consideration to her own ability to provide for her own support and maintenance[.]"

At the time of the divorce, both parties were in their early fifties. Husband was a partner at a law firm, where he earned $1.1 to $1.6 million annually. Although highly educated, wife was unemployed and had worked only part time during the marriage, earning no more than $7,000 a year. Prior to executing the PSA, wife underwent vocational evaluations. Husband's expert estimated that wife could earn $45,000 to $55,000 a year within two to three years, while her expert opined that she would be able to make only $38,000 to $46,500 annually.

---

[2] Although not specifically delineated as such, the factors listed in the PSA are those contained in Code § 20-107.3.

[3] The PSA does not expressly cite the statute, but the factors listed are those contained in Code § 20-107.1 in effect at the time.

After the divorce, the marital home was sold and wife used her portion of the proceeds to purchase a new home. Wife exercised her option to buy husband's interest in the beach house. At the time of the PSA, there were only a few years left on the land lease, but she renegotiated the lease, extending it for an additional sixty years. She then offered weekly rentals of the beach house, charging $2,300 to $3,500 per week, depending on the season. In September 2016, wife started a full-time job with Arlington County, where, as of the time of the modification hearing, she received an annual salary of just under $67,000.

On March 28, 2018, husband filed a motion to modify spousal support. He claimed that, pursuant to Code § 20-109, material changes in circumstances warranted a reduction in support, specifically "a significant reduction in [wife's] living expenses" based on the sale of the marital home and wife's "assumption of lower housing expenses" and an increase in wife's income based on new employment and rental income from the beach house. Wife responded that the events husband cited did not constitute material changes upon which a modification of support could be based. More specifically, wife asserted that the events were within the contemplation of the parties at the time of the PSA. Wife further argued that the amount should not be reduced because husband continued to be able to pay.

With husband's motion set for hearing, wife filed a motion *in limine* requesting the trial court exclude any evidence regarding the factors that led to the dissolution of the marriage, specifically any alleged adultery by wife. The trial court considered wife's motion at a hearing on September 28, 2018.[4]

At the hearing, husband agreed that any evidence regarding the reasons for the dissolution of the marriage should not be "considered as a basis for a material change in circumstances" but argued that Code § 20-109 required any grounds be considered in establishing a new award once a

---

[4] Judge Daniel S. Fiore presided over the motion *in limine*.

- 3 -

material change is found. Husband recognized that grounds as a factor would not change and "agree[d] you have to show a change in circumstances first." Husband conceded that the parties knew and considered the reason for the dissolution of the marriage at the time they entered the PSA, but argued that because the reason "wasn't previously litigated . . . there is no *res judicata*." The trial court queried, "wouldn't . . . the parties . . . only be entitled to raise facts that exist post-agreement?" Husband replied, no "[b]ecause the statute says that the court can consider any factor." Husband argued that even though the first part of Code § 20-109(G) is written as though permissive ("the court may consider"), its requirement that the trial court make written findings renders the consideration mandatory.

The trial court granted wife's motion by order entered January 16, 2019. In its order, the trial court stated that, "while marital adultery may be relevant when awarding spousal support, the record is insufficient for the [trial c]ourt to find such evidence relevant to a modification of support[.]" The trial court further noted that, upon entering into the PSA, the parties "provided therein that they considered those factors set forth in [Code § 20-]107.3 which . . . include[] 'the circumstances which contributed to the dissolution of the marriage'"; it then concluded "that such consideration previously having been made to determine the spousal support cannot now be relevant to a material change in circumstances to modify that support . . . ." The trial court consequently ordered that "evidence of adultery prior to the award of spousal support is prohibited in the upcoming hearing for modification of that spousal support."

Husband's motion to modify support was heard on May 29, 2019. He specifically asked the trial court to reduce his support obligation to $10,000 per month. In doing so, husband did not "claim that [his] ability to pay ha[d] decreased."[5] In his opening statement, husband asserted

---

[5] In fact, during the hearing, he conceded that he retained the ability to pay the existing spousal support award.

- 4 -

instead that "in 2015, [wife] had no employment income and insisted that she would not have any employment income in the future. She stated it would not be possible unless she could buy a business or get some significant retraining." He also challenged her expenses, citing attorney's fees that would extinguish, gifts to her adult children, and reduced tax liability upon reduction of support.

Husband called both parties as witnesses in his case-in-chief, and they were subject to cross-examination.

Husband questioned wife regarding responses she gave to interrogatories in 2015 as part of the parties' settlement negotiations. She confirmed that she had stated under oath that

> For me to get out in the work world and make money, I would need either investment money to buy or start a business or money to obtain a certificate or degree or additional training, particularly in the IT world. I have extremely limited knowledge of computers, word programs, et cetera. Frankly, at 51, I'm not confident about my prospects of learning a new trade after being out of the workforce for so many years.

Wife affirmed that the statement "was true at the time" but did not agree with husband's assertion that "[her] position was [she] didn't think [she] could make anything"; she explained, "If I'm looking at my words, I said I'm not confident about my prospects. That's not the same as I can't."

In addition to her changed employment situation, wife testified to the income from her beach house rental and small business as well as the expenses associated with them. She introduced into evidence a spreadsheet supporting her unrebutted testimony that the "total expenses [related to the beach house] exceed the rent that [she] received."

During husband's testimony, husband reviewed how the parties' assets had been divided at the time of the divorce and attempted to approximate some of their current values. He testified to his annual income since the divorce and submitted his tax returns. When questioned as to whether there had been a material change in circumstances since spousal support had been established in the

PSA, husband responded, "the changes are on her side . . . she has a significant material change in her income . . . [a]nd then there's also been a decrease in [her] expenses." During cross-examination, wife's counsel asked that the trial court "give context to what's material in light of what his income is." Husband acknowledged he was aware of the vocational experts' opinions regarding wife's earning capacity and testified that, at the time he entered into the PSA, he believed she was capable of making more than the $55,000 his expert had said she could earn.

At the close of husband's evidence, wife made a motion to strike, arguing that "[e]ven in the best light, [a material change in circumstances] has not been proven." Referencing the language of the PSA, wife contended that the sale of the marital home and wife's earning capacity, and not just then-current income, were "in the contemplation of the parties." Wife further argued that her employment, even if it "was not foreseeable, it's not a material change at this level." Acknowledging her additional rental income, wife stated that the beach house "rents in the negative, and the substance of that has not been challenged." Wife emphasized that it was husband's "burden to show why [the support] should change."

In response, husband relied on "the legal standard for a motion to strike[,]" citing cases that held "that a motion to strike at the end of [p]laintiff's case should not be granted unless it is conclusively apparent the [p]laintiff has not proven any cause of action against the [d]efendant." Husband further recited that "any doubt about the sufficiency of the evidence should be resolved against the party making the motion." Husband summarized that "what [wife] is telling you is that if they put on no evidence at all, then they prevail." Husband contended that wife could not prevail, in part, because her additional income "is a change in circumstances that is material when you look at the amount of support she is getting." Husband reiterated his arguments regarding wife's need in light of the PSA, her expenses, and her spending and concluded by stating that "the [trial c]ourt has all the evidence necessary to procced to a ruling on the merits."

In addressing the motion to strike, the trial court acknowledged that "[t]he circumstances are different" in that wife "has a job when she didn't have one before," but concluded that the difference in wife's financial circumstances was not a material change. It stated, "The math doesn't even work out to a material change[.]" The trial court further commented that wife's new salary did not constitute a material change "particularly in light of all the circumstances . . . contemplated in [the PSA]."

The trial court noted that "the parties considered many factors in arriving at a support agreement" and concluded, based on the parties' disagreement over wife's potential to earn income at the time of the PSA, that it did not "think anyone entered into this agreement thinking she would never work again[.]" The trial court commented, "I think [husband] believed in his heart of hearts she could work" and that the alleged changes were "foreseeable at the time," and thus, were "not material changes." Husband sought clarification as to what test the trial court was employing in determining whether there had been a material change, and the trial court reiterated, "I think there was a contemplation, but I also think that . . . [husband had a] belief about her capacity to earn, what that quantitatively was."

Ultimately, the trial court concluded, "And my view is that it is not a material change in circumstance, and the motion [to strike] is appropriate, and I grant it." In making its ruling, the trial court explicitly stated that it was "viewing all the evidence in [husband's] favor at this juncture."

On June 20, 2019, the trial court entered its order granting wife's motion to strike "[f]or the reasons stated by the [c]ourt in its [bench] ruling[.]" The order further directed that husband pay wife $54,976.25 in attorney's fees. Husband objected to the order, and this appeal followed.

ANALYSIS

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." Niblett v. Niblett, 65 Va. App. 616, 623 (2015) (quoting Stiles v. Stiles, 48 Va. App. 449, 453 (2006)). "[T]he party who asserts the contrary is required to overcome the presumption by record proof." Hart v. Hart, 27 Va. App. 46, 69-70 (1998) (quoting Broom v. Broom, 15 Va. App. 497, 504 (1992)).

I. Husband's assignments of error

Husband assigns ten errors to the judgment of the trial court. The first three assert that the trial court erred in granting wife's motion *in limine*, preventing him from offering evidence of her alleged adultery in support of his petition for a modification of spousal support. Assignments of error four through eight challenge the trial court's granting of wife's motion to strike based on its conclusion that husband failed to establish that there had been a material change in circumstances since the initial spousal support award. Assignment of error nine asserts that the trial court erred in not delineating the factors it considered in reaching its decision. Husband's final assignment of error asserts that the trial court's award of attorney's fees to wife was in error. Because the resolution of husband's challenge to the trial court's finding that there had been no material change in circumstances and subsequent granting of the motion to strike potentially moots other arguments raised by husband, we address that challenge first.

II. Material change in circumstances

Seeking to reduce his monthly spousal support payment, husband filed a motion invoking a provision of the PSA that provided he must pay wife $18,500 a month in spousal support "until modified by a court of competent jurisdiction based upon a material change in circumstances justifying such change." Although the PSA does not define the phrase "material change in

circumstances," the phrase is also a statutory one. See, e.g., Code § 20-109(B) (providing that a trial court may "increase, decrease or terminate the amount or duration of the award upon finding that . . . there has been a material change in the circumstances of the parties, not reasonably in the contemplation of the parties when the award was made"). Accordingly, we have been called on to define it on multiple occasions.

For there to be a "material change," there must have been a "change," meaning that circumstances cited as justification for a change in the award "must have occurred after the most recent judicial review of the award[.]" Moreno v. Moreno, 24 Va. App. 190, 195 (1997). In addition, the change must not have been reasonably foreseeable or within the contemplation of the parties at the time of the prior award because such foreseeable occurrences "will not constitute a material change in circumstances." Dailey v. Dailey, 59 Va. App. 734, 741 (2012). Furthermore, the change must relate in some way to the support award, meaning that it "must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay." Moreno, 24 Va. App. at 195 (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419 (1988)). Thus, "[t]he 'circumstances' which make 'proper' an increase, reduction or cessation of spousal support . . . are financial and economic ones." Hollowell, 6 Va. App. at 419.

In finding that there had not been a material change in circumstances, the trial court concluded that, although wife was not employed at the time of the PSA, her obtaining employment was within the contemplation of the parties. Furthermore, the trial court concluded that, given the totality of the parties' financial situations at the time of the initial award, the increases in wife's income and any lessening of her expenses did not amount to a material change, finding that the "math" did not establish a material change.

On appeal, husband challenges this conclusion in five assignments of error, numbers four through eight. Although spread across five assignments of error, husband essentially makes two

- 9 -

arguments, one challenging the method by which the trial court reached its conclusion and the other challenging the substance of its ultimate conclusion.

In his first challenge, he contends that the trial court erred in granting the motion to strike because it applied an erroneous standard to the evidence, i.e., he contends that the trial court, despite stating that it had done so, failed to consider the evidence in the light most favorable to him. This is essentially an objection about timing. As fact finder, the trial court would have been free to draw inferences adverse to husband and would have been free to reject his evidence at the close of all of the evidence. However, because the decision was reached on a motion to strike as opposed to at the close of all of the evidence, husband contends that the trial court committed error by impermissibly weighing the evidence and drawing inferences adverse to him.

In his second challenge, husband argues that the evidence is such that it conclusively establishes that there had been a material change in circumstances "as a matter of law." Accordingly, he asserts the trial court erred in reaching a contrary conclusion. We address each contention in turn.

A. Timing of the trial court's ruling

Husband correctly notes that, in considering a motion to strike, the trial court was required to view the evidence in the light most favorable to him, the party whose evidence was subject to the motion to strike. See, e.g., Austin v. Shoney's, Inc., 254 Va. 134, 138 (1997). He quotes the Supreme Court's decision in Rascher v. Friend, 279 Va. 370, 377 (2010), for the proposition that "[t]he trial court should overrule a motion to strike the evidence in every case in which there is any doubt that the party with the burden to do so has failed to" offer sufficient evidence to allow for a finding in his favor. Although both Austin and Rascher were tort cases tried before juries, we have held that the same standard applies to motions to strike in domestic

relations matters that are tried by the court and not a jury.  See, e.g., Barnes v. Barnes, 64

Va. App. 22, 26 (2014); Chaplain v. Chaplain, 54 Va. App. 762, 772-73 (2009).

Our recognition that the same standard applies to the resolution of motions to strike in

domestic relations bench trials as applies in tort jury trials does not mean the situations are

identical.  They are different.  The failure of a trial court to adhere to the standard in the jury trial

context results in the trial court "invad[ing] the province of the jury and [improperly] assess[ing]

the weight of the evidence."  Tahboub v. Thiagarajah, ___ Va. ___, ___ (Feb. 13, 2020).  No

such danger exists in a domestic relations bench trial because the trial court is the ultimate fact

finder, and therefore, there is no "province of the jury" that can be invaded.

This represents a distinction with differences.  When the case is taken from the jury, we

have no idea how it viewed the evidence that had been adduced and whether its view differed

from the view underlying the trial court's granting of the motion to strike.  This contrasts with

motions to strike in bench trials where the ultimate fact finder's view of the evidence and the

trial court's view of the evidence are, by definition, one and the same.  Furthermore, when the

trial court, as here, explains its view of the evidence and why it reached the conclusion on the

motion to strike that it has, we are not left to guess how the fact finder viewed the evidence.  We

know it to a certainty.

This has significant implications for our review.  Even if we assume that, as asserted by

husband, the trial court impermissibly weighed the evidence in deciding the motion to strike, the

record makes clear that any such error was harmless, and therefore, cannot constitute reversible

error.[6]

---

[6] It is important to recognize that our assumption that the trial court applied an incorrect standard is merely that, an assumption based upon husband's argument.  We recognize that, contrary to the premise of husband's challenge, the trial court explicitly stated that it was "viewing all the evidence in [husband's] favor at this juncture."  Husband contends that the record belies that statement.  We need not resolve that question because, even if we assume that husband's contention

- 11 -

Harmless error is not a "prudential, judge-made doctrine of appellate review[;]" rather, it "is a legislative mandate[.]" Commonwealth v. White, 293 Va. 411, 419 (2017); see also Code § 8.01-678 ("When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any error committed on the trial."). "Code § 8.01-678 makes 'harmless-error review required in *all* cases.'" Commonwealth v. Swann, 290 Va. 194, 200 (2015) (quoting Ferguson v. Commonwealth, 240 Va. ix, ix (1990)).

An alleged error is harmless "when we can conclude that the error at issue could not have affected the court's result." Forbes v. Rapp, 269 Va. 374, 382 (2005). Here, we can say with confidence that the alleged error did not affect the trial court's decision.

In a formal sense, by granting the motion to strike at the conclusion of husband's evidence, the trial court only had husband's evidence before it. However, viewing the matter in that way ignores that the presentation of husband's evidence included, for all practical purposes, wife's evidence as well. Only two witnesses testified at the hearing regarding whether there had been a material change in circumstances: husband testified in support of his motion and he also called wife adversely. Thus, both husband's view of whether there had been a material change in circumstances and wife's view of the issue were fully before the trial court at the conclusion of husband's evidence. Furthermore, both parties introduced documentary evidence pertinent to the issues during husband's case. At no point in the trial court or on appeal has husband suggested that there was additional evidence that would have been offered by either party if the trial court

---

is correct, the outcome does not change. See Commonwealth v. White, 293 Va. 411, 419 (2017) (recognizing that "judicial restraint dictates that we decide cases on the best and narrowest grounds available" and that "the best and narrowest ground" can be that "the alleged trial court error, *if error at all*, was harmless as a matter of law" (emphasis added) (internal quotation marks and citation omitted)); Geouge v. Traylor, 68 Va. App. 343, 377 (2017) ("It is often the case that the best and narrowest ground for resolving a case involves not the merits of the underlying issue, but rather, whether the alleged error had any effect on the outcome.").

would have denied the motion to strike. To the contrary, in concluding his argument on the motion to strike in the trial court, husband argued that the trial court had before it "*all the evidence necessary to proceed to a ruling on the merits*" of the question of whether there had been a material change in circumstances. (Emphasis added).

Thus, as husband acknowledged, "all" of the pertinent evidence related to whether there had been a material change in circumstances was before the trial court when it ruled on the motion to strike. Even assuming that the trial court jumped the gun and began weighing the evidence at the motion to strike stage as opposed to waiting for the formal close of the evidence, we know the outcome would have been no different had the trial court waited until the formal close of the evidence. With no additional evidence to be offered and the trial court free to weigh the evidence as fact finder, it is beyond absurd to contend that the trial court, given its stated view of the evidence, would have concluded that there had been a material change in circumstances.[7] Accordingly, assuming the trial court erred in the manner alleged, any such error was harmless.[8]

---

[7] At oral argument in this Court, husband argued that we cannot reach this conclusion because we "don't know what is going to happen," are just "guessing" what would have happened, and that we are "not clairvoyant." Although we agree that we lack the power of clairvoyance, the remainder of husband's argument is nothing more than an assertion that no one truly can know what would have happened if the trial court had not taken the action he contends constitutes error, and therefore, we cannot base our decision on our conclusion of what the effect of removing the alleged error would have been. If husband were correct in this assertion, harmless error review would be impossible. For the reasons stated above, that decidedly is not the law.

[8] In fact, the case is one of the better examples of the underlying rationale for harmless error review. If we were to reach the question, agree with husband that the trial court had impermissibly weighed the evidence, and then remand the case to the trial court, which then presumably would deny the motion to strike on that basis, the only rational response from wife would be to rest her case without putting on additional evidence. Free to weigh the evidence, the trial court would certainly find what it had found before, i.e., no material change in circumstances had occurred. Harmless error review exists to avoid such wastes of time, money, and judicial resources.

B. Material change as a matter of law

In addition to challenging the method by which the trial court resolved the motion to strike, husband also challenges the substance of the ruling. He asserts that the evidence before the trial court *required* a finding that there had been a material change in circumstances. In essence, he argues that, no matter how one views the facts, they establish a material change in circumstances "as a matter of law."[9]

In assessing whether there had been a material change in circumstances since the prior award, the trial court had to determine what the circumstances of the parties were at the time of the prior award. Because the initial award was based on a pretrial settlement, there was no prior trial in the traditional sense. As a result, the trial court could not refer to testimony that had been given in the prior proceeding or factual findings made by a court as a result of the prior proceeding because such a record did not exist. Thus, to determine what the circumstances were at the time of the prior award, the trial court could rely only on the testimony of the parties in the current trial, the PSA, the prior order of divorce, and other documentary evidence admitted at trial.

In their testimony at trial, the parties agreed that at the time of the PSA, wife was unemployed. Testimony also established that she began working for Arlington County in 2016 and that, at the time of trial, her annual salary from Arlington County was approximately

---

[9] Unlike the argument regarding the motion to strike, which requires that the evidence be viewed in the light most favorable to husband, an argument that the evidence *required* the trial court to find a material change in circumstances "as a matter of law" is not so circumscribed. It is no longer an argument that the evidence, viewed in the light most favorable to husband, states a *prima facie* case of a material change in circumstances. The argument that a finding of a material change in circumstances was required as a matter of law is, by definition, an argument that such a finding is required after *all of the evidence has been considered and weighed*.

$67,000.[10] According to husband, these facts alone establish that there had been a material change in circumstances; however, the trial court dug a little deeper in making its determination.

Specifically, the trial court considered whether, at the time of the PSA, the parties contemplated the possibility of future employment of wife, concluding that neither party had "entered into this agreement thinking she would never work again" and that husband "believed in his heart of hearts she could work[.]" This conclusion finds support in the fact that the parties engaged vocational experts prior to entering into the PSA.[11] Clearly, the issue of her earning an income in the future was contemplated by the parties.

The trial court's conclusion also finds support in the express terms of the PSA. Although the PSA does not impute a specific income number to either wife or husband, it provides that, in arriving at the amount of spousal support, "[t]he parties considered . . . [t]he earning capacity, obligations, needs and financial resources of each other[.]" Furthermore, the PSA more specifically notes that the spousal support amount took into consideration wife's "reasonable requirements, giving due consideration to her own ability to provide for her own support and maintenance[.]" These provisions demonstrate that the possibility that wife would work outside the home (or at least that she was capable of doing so) was one of the circumstances underlying the parties' agreement on spousal support and played a role in setting the initial support

---

[10] The evidence established that wife's taxable income was significantly lower than her wages because she elected to participate in deferred compensation/retirement programs provided by her employer.

[11] Unsurprisingly, the parties viewed the vocational evidence in the light most favorable to their litigation positions at the time they entered into the PSA. Specifically, at the time they entered into the PSA, wife believed that her expert, who estimated her annual earning capacity as being between $38,000 to $46,500, overstated her likely earning capacity, and husband believed that his expert, who estimated wife's annual earning capacity as being between $45,000 to $55,000, had understated wife's earning capacity. Thus, at the time the PSA was entered into, the parties differed on her potential earning capacity with the expert evidence suggesting a range between $38,000 and $55,000 per year.

obligation. Accordingly, the trial court appropriately considered this in determining whether there had been a material change in circumstances.[12]

Accepting the trial court's reasonable conclusion that the parties contemplated wife working after entering the PSA, the PSA's express provision indicating that the parties considered wife's earning capacity in determining the amount of spousal support, and *husband's* sworn testimony that, at the time of the PSA, he believed wife's earning capacity was greater than $55,000, we cannot say that the trial court erred in concluding that her increase in income did not represent a material change in circumstances. Given the amount of increased income in comparison to the initial spousal support of $18,500 a month, the amount of wife's salary in relation to the vocational evidence known by the parties at the time of the PSA, and husband's undisputed income of more than a million dollars a year at the time of the PSA and continuing, the evidence supports the trial court's determination that the change was not material. In so finding, we do not conclude that no rational fact finder viewing all of the facts and circumstances could have come to a different conclusion; rather, we only hold that a rational fact finder could

---

[12] At oral argument in this Court, husband argued that the trial court could not consider the issue because the PSA did not include an imputation of either income or earning capacity to wife. He argued that the PSA "speaks for itself" and that both the trial court and this Court are bound by the "four corners of the" PSA, and therefore, cannot consider anything extrinsic to the PSA. This argument fails for multiple reasons. First, when wife asked husband about his understanding of her earning capacity at the time of the PSA and what his own expert had opined at that time, husband did not object. Thus, even if we were to assume (which we do not) that such evidence was objectionable, the lack of an objection means that it was properly before the trial court. Furthermore, we note that the first party to offer such evidence at trial was husband, whose counsel questioned wife about her vocational expert's estimate regarding her earning capacity at the time of the PSA.

Interestingly, if husband were correct that the trial court could consider only the "four corners of the" PSA in determining what the circumstances were at the time the parties entered into the PSA, *his* claim would fail as a matter of law. The PSA does not mention whether or not wife was employed at the time of the PSA; husband established that she was unemployed at that time only through testimony extrinsic to the PSA. If, as husband now argues, such evidence cannot be considered, he would never be able to establish the baseline condition from which he argues there has been a material change.

reach the conclusion reached by the trial court, and therefore, husband's argument that the evidence established a material change in circumstances "as a matter of law" is not well-founded.

### III. Evidence of adultery

In the proceedings below, husband repeatedly conceded that the evidence relating to alleged adultery was irrelevant to establishing whether there had been a material change in circumstances. By definition, any adultery would have predated the divorce and award of spousal support, and therefore, such evidence could never establish a change, material or otherwise, in circumstances. Rather, he argues that, if there were a material change in circumstances, amendments to Code § 20-109(G) allowed the trial court to consider adultery in recrafting a support award.

Absent a material change in circumstances, the trial court could not recraft the support award regardless of the other evidence husband sought to offer. See Roberts v. Roberts, 41 Va. App. 513, 528 (2003); Head v. Head, 24 Va. App. 166, 178 (1997). Here, the trial court did not find a material change in circumstances, and we have affirmed that judgment for the reasons stated above. Thus, husband's assignments of error related to the trial court's granting wife's motion *in limine* to prevent him from offering evidence of alleged adultery are moot. Accordingly, we do not address the merits of those assignments of error.

### IV. Written findings related to Code § 20-107.1(E) factors

In his ninth assignment of error, husband argues that the trial court erred when it failed to comply with Code § 20-109(G)'s requirement that "[a]ny order granting or denying a request for the modification or termination of spousal support shall be accompanied by written findings and conclusions of the court identifying the factors set forth in subsection E of § 20-107.1 and subsection F of this section that support the court's order." This requirement, however, assumes

that a party has established a material change in circumstances.  See Code § 20-109(G) (providing that a trial court considering the modification of a spousal support award "may consider" the factors found in Code § 20-107.1(E) "if the court finds that there has been a material change in circumstances").  Indeed, we previously have recognized that, in a modification proceeding under Code § 20-109, "a court need not consider the thirteen factors found in Code § 20-107.1 if the moving party has not carried its burden of proving a material change in circumstances that merited revisiting the support award."  Driscoll v. Hunter, 59 Va. App. 22, 35-36 (2011).  Here, the trial court did not find a material change in circumstances, and we have affirmed that judgment for the reasons stated above.  Accordingly, husband's ninth assignment of error is moot, and we do not address its merits.

### V.  Trial court's award of attorney's fees

The trial court made an award to wife for $54,976.25 for attorney's fees that she incurred in defending against husband's motion to modify the prior spousal support award.  Husband contends that, as reflected in the order, the trial court utilized an incorrect legal standard in making its award.  For the reasons that follow, we agree with husband.

"[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  Richardson v. Richardson, 30 Va. App. 341, 351 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333 (1987)).  Trial courts have broad discretion in awarding reasonable attorney's fees based on "the circumstances of the parties" and "the equities of the entire case[.]"  Allen v. Allen, 66 Va. App. 586, 601-02 (2016) (quoting Mayer v. Corso-Mayer, 62 Va. App. 713, 734 (2014)).  Although the abuse of discretion standard is forgiving, a trial court commits an abuse of discretion when it considers "an irrelevant or improper factor" to which it "give[s] significant weight[.]"  Lawlor v. Commonwealth, 285 Va. 187, 213

- 18 -

(2013) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011)).

Absent a contractual provision, the basis for awarding attorney's fees in this situation is Code § 20-99(6), which allows for such an award "as equity and justice may require." In Mayer, we noted that, in making its award of attorney's fees, "the trial court" did not "reference[] any specific circumstances of the parties or equities of the entire case that justified an assessment of attorney's fees[.]" 62 Va. App. at 734. This was significant because, absent such a balancing of the equities pursuant to Code § 20-99(6), an award of attorney's fees was not permissible. Id. (noting that, absent a statutory or contractual exception, we adhere to the "American Rule" that a party must bear his or her own attorney's fees). Because "the record [did] not reflect that the award of attorney's fees and costs to mother was premised on" anything other than the mother in Mayer having been the prevailing party, we reversed the award of attorney's fees.

Here, the trial court's award of attorney's fees was not made from the bench, but rather, was announced for the first time in the final order. Regarding fees, the order provides that "attorney fees are owed to [wife] (the prevailing party) in the sum of $54,976.25." Other than stating that wife was the "prevailing party[,]" no other basis for the award of attorney's fees is given. Thus, consistent with our holding in Mayer, we must reverse the award of attorney's fees.

In so doing, we offer no opinion as to whether a balancing of the equities in this case might support an award of such fees to wife. Rather, we only hold that, based on the record before us, the trial court did not engage in the required balancing in making its award. Accordingly, we remand the question of attorney's fees to the trial court for consideration of the question under the proper standard.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court as it pertains to its conclusion that husband failed to establish a material change in circumstances, but reverse the trial court's award of attorney's fees to wife. Accordingly, we remand the issue of attorney's fees incurred in the trial court to the trial court for further proceedings consistent with this opinion.[13]

Affirmed in part, reversed in part, and remanded.

---

[13] Both parties have requested, pursuant to Rule 5A:30(b), an award of attorney's fees for such fees incurred on appeal. "In determining whether to make such an award, the Court of Appeals shall not be limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but shall consider all the equities of the case." Rule 5A:30(b)(3). Having considered those equities, we decline to award appellate attorney's fees to either party.